Paul G. Karlsgodt (*pro hac vice* forthcoming)
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202
Phone: 303.861.0600
Fax: 303.861.7805
pkarlsgodt@bakerlaw.com

Michelle M. Buckley (AZ #030617)
**POLSINELLI PC**
One E. Washington St., Ste. 1200
Phoenix, AZ 85004
Phone: 602.650.2000
Fax: 602.264.7033
mmbuckley@polsinelli.com

*Attorneys for Defendant Yuma Regional Medical Center*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Trista Dallas and Nikolas Baldriche, as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Yuma Regional Medical Center,<br><br>Defendant. | Case No.<br><br>**NOTICE OF REMOVAL** |

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453 Defendant Yuma Regional Medical Center ("YRMC" or "Defendant"), hereby removes this action filed by Trista Dallas and Nikolas Baldriche ("Plaintiffs"), individually and on behalf of all others similarly situated, from the Superior Court of the State of Arizona in and for the County of Yuma, Arizona, where it is now pending, to the United States District Court for the District of Arizona. In support of removal, YRMC states as follows:

///

84454377.1

**JURISDICTION**

1. This is a civil action over which the Court has original subject matter jurisdiction under 28 U.S.C. § 1332. Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

2. This Court is in the judicial district and division embracing the place where the state court case was brought and is pending. Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

**BACKGROUND AND TIMELINESS OF REMOVAL**

3. On June 30, 2022, Plaintiffs, on behalf of themselves and, purportedly, all others similarly situated, filed a filed a Class Action Complaint (the "Complaint") against YRMC in Arizona State Court, Yuma County Superior Court, Case No. S-1400-CV-202200360 (the "State Court Action"). Plaintiffs filed the Complaint as a putative class action.

4. On July 5, 2022, Plaintiffs served YRMC with copies of the Summons and Complaint via process server. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all documents received in the State Court Action by YRMC are attached hereto as Exhibits.

5. Pursuant to Local Rule 3.6(b), attached are true and correct copies of all pleadings and other documents previously filed in the State Court Action, including the most recent state court docket (**Exhibit A**); the operative Complaint (**Exhibit B**); service documents (*i.e.*, Summons and Service Certificate) (**Exhibit C**); Certificate of Compulsory Arbitration (**Exhibit D**); and Demand for Jury Trial (**Exhibit E**).

6. No further pleadings or documents (*i.e.*, civil cover sheets, answers, state court orders terminating or dismissing parties, notices of appearance, responses, or replies to pending motions) have been filed in the State Court Action.

7. The Supplemental Civil Cover Sheet required by Local Rule 3.6(a) is attached hereto as **Exhibit F**.

8. A declaration by counsel for YRMC that true and correct copies of all pleadings and other documents filed in the State Court Action is attached hereto as **Exhibit G**.

84454377.1

9. This removal is timely because YRMC filed this removal within 30 days of being served with the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service of complaint); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 56 U.S. 344, 348 (1999) (time period for removal begins when defendant is served).

## CAFA JURISDICTION

10. <u>Basis of Original Jurisdiction.</u> This Court has original jurisdiction over this action under CAFA (codified in pertinent part at 28 U.S.C. § 1332(d)). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, and any member of the putative class is citizen of a different state than that of the defendant. § 1332(d)(1)-(2)(A); *Yocupicio v. PAE Grp., LLC*, 795 F.3d 1057, 1059 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84-85 (2014)).

11. As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), YRMC may remove the State Court Action to federal court under CAFA because: (1) this action is pled as a class action; (2) the putative class includes more than one hundred (100) members; (3) "minimal diversity" exists, *i.e.*, members of the putative class are citizens of a state different from that of Defendant; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020 (9th Cir. 2007) (citation omitted).

## THIS ACTION IS PLED AS A CLASS ACTION

12. CAFA defines a "class action" as "'any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.'" *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co., et al.*, 602 F.3d 1087, 1089 (9th Cir. 2010) (quoting 28 U.S.C. § 1332(d)(1)(B)).

13. Plaintiffs bring this action as a "class action" and seek certification of a class

– 3 –

84454377.1

pursuant to Arizona Rule of Civil Procedure 23. [Compl., ¶ 142.] Because Arizona Rule of Civil Procedure 23 is a "similar State statute authorizing an action to be brought by 1 or more representatives as a class action" as "Arizona Rule of Civil Procedure 23 'is identical to Federal Rule of Civil Procedure 23,'" *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 533 (9th Cir. 2011) (citation omitted), the first CAFA requirement is satisfied, [*see* Compl., ¶ 142 (bringing class action pursuant to Arizona Rule of Civil Procedure 23 and defining class as "[a]ll persons whose PII and/or PHI was compromised as a result of the Data Breach that YRMC discovered on or about April 21, 2022 (the 'Class').")].

### THE PUTATIVE CLASS INCLUDES AT LEAST ONE HUNDRED (100) MEMBERS

14. Plaintiffs allege that, on or about April 25, 2022, YRMC "identified a ransomware incident" during which "cybercriminals gained access to [YRMC's] network between April 21, 2022 and April 25, 2022, and removed a subset of files from [its] systems." [Compl., ¶¶ 36-37.] Plaintiffs further allege that, following investigation of the ransomware incident, YRMC determined that, "the accessed or acquired files included patients' names and other combinations of their Social Security number, health insurance identification number, demographic information, and/or medical information related to [patient] care." [*Id.* at ¶ 37.] Plaintiffs claim that the April 2022 ransomware attack resulted in unauthorized access to the personal information and medical records of approximately 737,448 current and former patients and employees (the "Data Breach"). [*Id.* at ¶ 1.]

15. Plaintiffs now purport to bring "this class action lawsuit on behalf of themselves and those similarly situated ('Class Members')" defined as "[a]ll persons whose PII and/or PHI was compromised as a result of the Data Breach that YRMC discovered on or about April 21, 2022 (the 'Class')." [*Id.* at ¶¶ 3, 102.]

16. Plaintiffs aver that, as a result of the Data Breach, Plaintiffs and Class Members suffered multiple damages, including, among other damages, future risk of "out-of-pocket fraud losses such as loans opening in their names, medical services billed in their names, tax return fraud, utility bills opening in their names, credit card fraud, and similar identity theft";

– 4 –

"out-of-pocket costs for protective measures such as credit monitoring freezes, credit report fees" and the like; "benefit-of-the-bargain damages"; "risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information"; "increased risk of harm from fraud and identity theft"; and "loss of value of their Private Information." [*Id.* at ¶¶ 131-36; *see also id.* at ¶ 146 ("The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time, based on information and belief, according to YRMC's notice to HHS, the Class consists of over 737,448 current and former patients whose data was compromised in the Data Breach. The Class defined above is identifiable through YRMC's business records.").]

17.    Furthermore, YRMC sent breach notification letters to approximately 720,217 individuals.

18.    Based on the above, the number of putative class members exceeds the statutorily-required minimum of 100 individuals. *See Kuxhausen* v. *BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) (finding that where a plaintiff alleges that the estimated number of putative class members in the complaint is greater than 200, "[n]o investigation" or "further inquiry" is necessary for the court to conclude that CAFA numerosity is satisfied).

## MINIMAL DIVERSITY OF CITIZENSHIP EXISTS

19.    Pursuant to 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . ***any member of the class of plaintiffs*** is a citizen of a State different from ***any defendant***." (emphasis added). *See also Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017) (stating that "CAFA only requires what is termed 'minimal diversity,'" *i.e.*, when "any member of a class of plaintiffs is a citizen of a state different from any defendant") (citation omitted). Accordingly, if any member of the purported class is a citizen of a state different than the state of citizenship of any defendant, then minimal diversity exists. *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1226 (9th Cir. 2019).

– 5 –

20. <u>YRMC's Citizenship</u>. Pursuant to 28 U.S.C. § 1332(c), a corporation is "deemed a citizen of its place of incorporation and the location of its principal place of business." *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990 (9th Cir. 1994); 28 U.S.C. § 1332(c)(1). A corporation's "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the cooperation's activities." *Morris v. Embry-Riddle Aeronautical Univ. Inc.*, No. CV-21-08102-PCT-DWL, 2021 WL 2773094, at *1 (D. Ariz. July 2, 2021) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010)). "This place, metaphorically dubbed the corporation's 'brain' or 'nerve center,' 'will typically be found at a corporation's headquarters,' 'provided that the headquarters is the actual center of direction, control, and coordination[.]'" *Id.* (quoting *Hertz Corp.*, 559 U.S. at 80-81, 93, 95).

21. YRMC is a corporation incorporated under the laws of Arizona with its headquarters at 2400 South Avenue A, Yuma, 85364. Because YRMC is incorporated in Arizona and maintains its principal place of business in Arizona, YRMC is a citizen of Arizona. [*See also* Compl., ¶ 25.]

22. <u>Plaintiffs' and the Putative Class Members' Citizenship</u>. For diversity purposes, an individual is a "citizen" in the state in which he or she is domiciled. *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020); 28 U.S.C. § 1332(a)(1). "One's domicile is his or her 'permanent home'—that is where (i) she resides, (ii) 'with the intention to remain there or to which she intends to return.'" *Adams*, 958 F.3d at 1221 (quoting *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013)); *see also Agullard v. Principal Life Ins. Co.*, 685 F. Supp. 2d 947, 950 (D. Ariz. 2010) (citation omitted). A person's state of residency is not equivalent to domicile (nor, therefore, citizenship), although residency is one factor to be considered in the domicile analysis. *Adams*, 958 at 1221 (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)); *see also Ehrman*, 932 F.3d at 1227 (citations omitted); *Lending Co., Inc. v. Craythorn*, No. CV 12–01205–PHX–NVW, 2012 WL 3585411, at *1 (D. Ariz. Aug. 20, 2012) (citation omitted).

23. As alleged in the Complaint, Plaintiffs are "individual citizen[s] residing in the

State of Arizona, in the City of Yuma, Yuma County." [Compl., ¶¶ 108, 118.] Accordingly, Plaintiffs are citizens of Arizona.

24.     Plaintiffs, however, seek to represent a class that includes "[a]ll persons whose PII and/or PHI was compromised as a result of the Data Breach that YRMC discovered on or about April 21, 2022[.]" [*Id.* at ¶ 142; *see also id.* at ¶ ("[B]ased on information and belief, according to YRMC's notice to HHS, the Class consists of over 737,448 current and former patients whose data was compromised in the Data Breach.").] To date, YRMC has sent notice of the alleged Data Breach to individuals with addresses in all 49 states other than Arizona, multiple U.S. territories, and Canada and Mexico.

25.     Therefore, the class, as defined by Plaintiffs, includes individuals who, in the absence of other evidence to the contrary, are residents and domiciled in—and thus citizens of—states other than Arizona, the state of citizenship of YRMC. Said differently, because at least one putative class member is a citizen of a state other than Arizona, "minimal diversity" is established pursuant to CAFA. *See Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (citing 28 U.S.C. § 1332(d)(2)(A)).

**THE AMOUNT IN CONTROVERSY EXCEEDS THE CAFA THRESHOLD[1]**

26.     Where a complaint does not specify the amount of damages sought, as is the case with Plaintiffs' complaint, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied. 28 U.S.C. § 1446(c)(2)(b). The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement. *Dart Cherokee Basin Operating Co.*, 574 U.S. at 89. The amount in controversy is "presumptively satisfied" unless "it appears to a 'legal certainty' that the plaintiff cannot actually recover that amount."

---

[1] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiffs or putative class members can state or have stated a claim or that they are entitled to damages in any amount. YRMC denies liability, denies Plaintiffs and/or Class Members are entitled to recover any amount, and denies that a class can be properly certified in this matter.

– 7 –

*Guglielmino v. McKee Foods Corp.*, 506 F.3d 595, 699 (9th Cir. 2007) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir. 1996)). Furthermore, in determining the amount in controversy under CAFA, the claims of all plaintiffs are aggregated to determine if the amount in controversy is more than $5,000,000, *Burge v. Freelife Int'l, Inc.*, No. CV 09–1159–PHX–JAT, 2009 WL 3872343, at *2 (D. Ariz. Nov. 18, 2009) (citing 28 U.S.C. § 1332(d)(6)), including "'class members' . . . (named or unnamed) who fall within the definition of the *proposed* or certified class,'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (citation omitted) (emphasis in original). In addition, in determining the amount in controversy, the Court must accept "all allegations contained in the complaint as true and assumes the jury will return a verdict in plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017). The "jurisdictional threshold is not defeated merely because it is equally possible that the damages [ultimately awarded] might be less than the . . . requisite amount." *Avila v. Kiewit Corp.*, 789 F. App'x 32, 33 (9th Cir. 2019) (citation and internal punctuation marks omitted).

27. As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000.

28. <u>Claims for Negligence and Negligence *Per Se*</u>. Plaintiffs bring claims for negligence and negligence *per se*. [Compl., ¶¶ 189-202 (negligence); ¶¶ 203-11 (negligence *per se*).]

29. Plaintiffs allege that YRMC "owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements . . . to ensure that its systems and networks, and the personnel responsible for them, adequately protected [Plaintiffs' and Class Members'] Private information." [*Id.* at ¶ 192.] Plaintiffs assert that YRMC had duties, including responsibility to use reasonable security measures under the common law, Section 5 of the Federal Trade Commission Act ("FTC"), 15 U.S.C. § 45, and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and in particular 45 C.F.R. § 164.530, *et seq.*, to protect Plaintiffs' and Class Members' information from unauthorized disclosure. [*Id.* at ¶¶ 193-95.]

– 8 –

30. Plaintiffs further allege that YRMC breached these and other duties, and was therefore negligent, "by failing to use reasonable measures to protect Class Members' Private Information" as well as "[f]ailing to timely notify Class Members about the Data Breach," among other things. [*Id.* at ¶ 197.]

31. Plaintiffs further allege that YRMC's failure to comply with Section 5 of the FTC and the other data security measures outlined under HIPAA constitutes negligence *per se*. [*Id.* at ¶¶ 204-08.]

32. As a result of YRMC's alleged negligence and negligence *pe se*, Plaintiffs claim they and the Class have suffered or will suffer "one or more types of injuries," as described elsewhere in the Complaint. [*Id.* at ¶¶ 199, 209-11.] Plaintiffs claim they are therefore entitled to "compensatory and consequential damages" for YRMC's alleged negligence, and "compensatory, consequential, and punitive damages" for YRMC's alleged negligence *per se*. [*Id.* at ¶¶ 200, 211.] Plaintiffs also claim they are entitled to injunctive relief requiring YRMC to "(i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate and long-term credit monitoring to all Class Members." [*Id.* at ¶ 202.]

33. The Complaint contains no allegations that would support or suggest the amount in damages Plaintiffs or any of the putative class members allegedly sustained as a consequence of YRMC's negligence or negligence *per se*. However, because Plaintiffs seek injunctive relief specifically requesting that YRMC be continued to provide "long-term credit monitoring" to them and putative class members, and in fact specifically demand that YRMC be required to provide "not less than seven years of credit monitoring services for Plaintiffs and the Class," [*id.* at ¶¶ 202, Prayer for Relief(E)], one option for assigning a value to these damages is through the cost of credit monitoring.

34. Three prominent identity-protection agencies (Equifax, IDShield, and Experian) advertise monthly rates for credit monitoring services ranging from $14.95 to $19.99 per person per month. For example, IDShield Individual offers one-bureau credit

monitoring with an unlimited service guarantee, dark web internet monitoring, data breach notifications, full-service restoration when theft occurs, and 24/7 emergency assistance, among other services, for $14.95 per month for one individual.[2]  Similarly, both Equifax[3] and Experian[4] offer products that provide 3-Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $19.99 a month, respectively.  Multiplying the cost of providing one month of credit-monitoring services at $14.95 (the cheapest of the three products) by the number of alleged putative class members, the amount in controversy for just one month of credit monitoring is approximately $10,767,244 (calculated as 720,217 individuals notified, times 1 month, times $14.95 per month).  If the Court were to award Plaintiffs the *seven years* of additional credit monitoring Plaintiffs have requested for each of the 720,217 putative class members, the total cost would be approximately $904,448,784 (calculated as multiplying the total cost of providing credit monitoring to all class members for one month, $10,767,244, by 84 months), over 180 times greater than the $5,000,000 jurisdictional threshold.[5]

35.    Accordingly, Plaintiffs' and the putative class members' potential credit-monitoring damages alone far exceed the amount in controversy threshold of $5,000,000.

---

[2] See *IDShield Plans & Pricing*, https://www.idshield.com/plans-and-pricing (last visited July 24, 2022); *see also IDShield Individual*, https://checkout.idshield.com/?plan=IDSI&freetrial=true&region=TX (last visited July 24, 2022).

[3] *See Equifax*, https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=502355994880&DS3_KIDS=p50281164756&campaignid=71700000061086345&sakwid=43700050281164756&gclid=EAIaIQobChMIzpzAneG28wIVS9KzCh3vCA_MEAAYASAAEgIjevD_BwE&gclsrc=aw.ds (last visited July 24, 2022).

[4] *See Experian CreditLock*, https://www.experian.com/lp/creditlock.html?bcd=ad_c_sem_427_515842009606&k_id=_k_EAIaIQobChMIzZ63geO28wIVTR-tBh0rgAUsEAAYASABEgIWwfD_BwE_k_&k_kw=aud-422897489015:kwd-317312162328&k_mt=e&pc=sem_exp_google&cc=sem_exp_google_ad_858684474_43905679139_515842009606_aud-422897489015:kwd-317312162328_e___k_EAIaIQobChMIzZ63geO28wIVTR-tBh0rgAUsEAAYASABEgIWwfD_BwE_k_&ref=identity&awsearchcpc=1&gclid=EAIaIQobChMIzZ63geO28wIVTR-tBh0rgAUsEAAYASABEgIWwfD_BwE (last visited July 24, 2022).

[5] And if YRMC were to use the approximate number of total impacted individuals in the Data Breach as alleged in the Complaint—737,448 individuals—the total amount YRMC could be requiring to pay in credit monitoring damages would be even greater.

– 10 –

84454377.1

1  Combined with their other alleged negligence and negligence *per se* damages, the total
2  amount in controversy is well in excess of $5,000,000.

3      36.    <u>Claims for Breach of Implied Contract</u>.  Plaintiffs also bring claims for breach
4  of implied contract.  [Compl., ¶¶ 157-81.]  Specifically, Plaintiffs claim that they and the
5  Class entered into implied contracts with YRMC "when they first went [for] medical care
6  and treatment at one of Defendant's facilities" and when they "provided their Private
7  Information to Defendant in exchange for Defendant's services." [*Id.* at ¶¶ 159, 161.]  The
8  implied contract therefore included "Defendant's promise to protect nonpublic Private
9  Information given to Defendant or that Defendant create[d] on its own from disclosure,"
10 which was allegedly "acknowledged, memorialized, and embodied in multiple documents,
11 including (among other documents) Defendant's Privacy Practices." [*Id.* at ¶¶ 160, 167.]
12 Plaintiffs aver that YRMC breached the implied contract formed between Defendant,
13 themselves, and Class Members "when the[ir] information was accessed and exfiltrated by
14 unauthorized personnel as part of the Data Breach," and when YRMC allegedly failed to
15 comply with industry standards, standards of conduct embodied in statutes like HIPAA, 42
16 U.S.C. §§ 1301, *et seq.*, and Section 5 of the FTC Act, or otherwise protect Plaintiffs and the
17 Class Members' Private Information. [*Id.* at ¶¶ 173, 175.]

18      37.    As a result of YRMC's alleged breach of implied contracts, Plaintiffs assert
19 that they and putative class members "did not receive the full benefit of the bargain [of their
20 implied contracts] . . . [and] therefore were damaged in an amount at least equal to the
21 difference in the value of the healthcare with data security protection they paid for and the
22 healthcare they received." [*Id.* at ¶ 177.]  Plaintiffs also assert that they and Class Members
23 have suffered and will continue to suffer, among other damages, "release and disclosure of
24 their Private Information"; "loss of control of their Private Information"; "the imminent risk
25 of suffering additional damages in the future"; "disruption of their medical care and
26 treatment"; and "out-of-pocket expenses." [*Id.* at ¶ 179.]  Consequently, Plaintiffs aver that
27 they are entitled to recover "compensatory and consequential damages" and "injunctive
28 relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring

– 11 –

84454377.1

procedures, (ii) submit to future annual audits of those systems and monitoring procedures, and (iii) immediately provide adequate credit monitoring to all Class Members." [*Id.* at ¶¶ 180-81.]

38.   Plaintiffs' Complaint contains no allegations that would support or suggest the amount in damages they or any of the putative class members allegedly sustained as a result of YRMC's breach of implied contract. However, when Plaintiffs' and putative class members' alleged breach of implied contract damages are combined with the damages alleged under the other claims in the Complaint, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

39.   <u>Violation of the Arizona Consumer Fraud Act</u>:   Plaintiffs also allege that YRMC violated the Arizona Consumer Fraud Act ("ACFA"), Ariz. Rev. Stat. § 44-1521, *et seq.*, by engaging in deceptive or unfair acts or practices in the advertisement, offer, or sale of "merchandise," *i.e.*, "medical services," to Plaintiffs and the putative class. [Compl., ¶¶ 232-40.] Specifically, Plaintiffs claim that YRMC engaged in material "deceptive and unfair practices" likely to deceive reasonable consumers in violation of the ACFA by, among other things, "[f]ailing to implement and maintain reasonable security and privacy measures to protect its patients' Personal Information (including that of Plaintiffs and Class Members), which was a direct and proximate cause of the Data Breach"; "[f]ailing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class members' Personal Information"; "[m]isrepresenting that [YRMC] would protect the privacy and confidentiality of Plaintiffs' and Class Members' Personal Information, including by implementing and maintaining reasonable security measures"; and by "[o]mitting, suppressing, and concealing the material fact that [YRMC] did not reasonably or adequately secure Plaintiffs' and Class Members' Personal Information." [*Id.* at ¶¶ 237-38.] Plaintiffs further state that "YRMC intended to mislead Plaintiffs and Class Members and induce them to rely on its misrepresentations and omissions," and that Plaintiffs and Class Members have been injured as a result. [*Id.* at ¶¶ 239-40.]

40.   Although Plaintiffs' Complaint contains no allegations that would support or

– 12 –

suggest the amount in damages they or any of the putative class members allegedly sustained as a result of YRMC's alleged violation of the ACFA, the ACFA permits an injured plaintiff to recover actual damages and punitive damages if he or she proves violation of the statute. *See Howell v. Midway Holdings, Inc.*, 362 F. Supp. 2d 1158, 1165 (D. Ariz. 2005) ("Punitive damages are available under the ACFA.");

41.     Accordingly, considering Plaintiffs' and putative class members' damages for violation of the ACFA, which, as described above, can include, among other damages, actual damages, punitive damages, and disgorgement, combined with the other damages alleged in the Complaint, further demonstrate that the amount in controversy far exceeds CAFA's $5,000,000 threshold.

42.     <u>Prayer for Other Monetary and Injunctive Relief</u>.  Plaintiffs also pray for additional monetary and injunctive relief.  [Compl., Prayer for Relief (A)-(J).]  For example, in addition to the relief requested for YRMC's alleged violation of each of the claims asserted in the Complaint, Plaintiffs pray for "an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowed by law" as well as punitive damages, attorneys' fees, "costs, and any other expensive, including expert witness fees," and any other relief the Court may deem just and proper.  [*Id.* at Prayer for Relief(F)-(G), (J).]  These requests for relief, combined with the other damages alleged in the Complaint, further demonstrate that the amount in controversy exceeds the CAFA threshold.

43.     Plaintiffs also pray for injunctive relief, including, but not limited to, an order compelling YRMC to "utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of PII and PHI compromised during the Data Breach" and an order enjoining YRMC from "engaging in the wrongful conduct complained of [in the Complaint] pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' Private Information," etc. [Compl., Prayer for Relief(B)-(C).]

44.     "'In actions seeking declaratory or injunctive relief, it is well established that

– 13 –

84454377.1

1  the amount in controversy is measured by the value of the object of the litigation'" or the
2  "value of the thing 'sought to be accomplished by the action.'" *Van Dyke v. Retzlaff*, No.
3  CV-18-04003-PHX-SMB, 2019 WL 276037, at *2 (D. Ariz. Jan. 22, 2019) ("'In actions
4  seeking declaratory or injunctive relief, it is well established that the amount in controversy
5  is measured by the value of the object of the litigation.'") (quoting *Corral v. Select Portfolio*,
6  878 F.3d 770, 775 (9th Cir. 2017)); *Pagel v. Dairy Farmers of Am., Inc.*, 986 F. Supp. 2d
7  1151, 1159 (C.D. Cal. 2013) (citation omitted).  In determining the "value of the object of
8  the litigation," courts in the Ninth Circuit have adopted the "either viewpoint rule," which
9  provides that a court should consider "'the pecuniary result to either party which the
10 judgment would directly produce'" when determining the amount in controversy. *Van Dyke*,
11 2019 WL 276037, at *2 (quoting *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d
12 952, 958 (9th Cir. 2001)).  "'Under this rule, either the plaintiff's potential recovery or the
13 potential cost to the defendant of complying with the injunction must exceed the
14 jurisdictional threshold.'"  *Id.* (quoting *Stelzer v. CarMax Auto Superstores Cal., LLC*, No.
15 13–cv–1788 BAS (JMA), 2014 WL 3700269, at *3 (S.D. Cal. July 24, 2014)).  In class
16 actions removed under CAFA, the Court may also aggregate each class member's claims to
17 determine whether the aggregate cost to the defendant of complying with any injunctive
18 relief requested exceeds the amount in controversy threshold. *Pagel*, 986 F. Supp. 2d at 1160
19 (citation omitted).

20         45.    Applied here, any potential recovery to Plaintiffs, including "injunctive and
21 equitable relief as necessary to protect the interests of Plaintiffs and Class Members," to the
22 extent such relief exists, combined with the other damages alleged in the Complaint,
23 underscores that the amount in controversy is greater than $5,000,000.

24         46.    From the "viewpoint" of Defendant, the aggregate cost to YRMC of complying
25 with Plaintiffs' requests for injunctive relief would involve potentially overhauling its state
26 and federal regulatory privacy and cyber security policies, implementing new training
27 procedures, and potentially hiring outside auditors and third-party forensic firms to conduct
28 testing and reviews of YRMC's systems and network in order to comply with Plaintiffs'

– 14 –

84454377.1

requested Court order to "utilize appropriate methods and policies with respect to consumer data collection, storage, and safety[.]"  [Compl., Prayer for Relief(C).]  The cost of potentially modifying YRMC's privacy and cyber security policies, instituting new training, and hiring outside vendors, among the other injunctive and other monetary relief requested, combined with the other damages alleged in the Complaint, further underscores that the amount in controversy is greater than $5,000,000.  *See, e.g.*, *Lokey v. CVS Pharmacy, Inc.*, Case No. 20-cv-04782-LB, 2020 WL 5569705, at *5 (N.D. Cal. Sept. 17, 2020) (accepting defendant's assessment that the cost of complying with plaintiff's requested injunctive relief was "at least $3,888,363," when compliance potentially entailed "overhauling [the product at issue] in some way," including by "removing the product from shelves and warehouses, destroying existing inventory, developing new packaging, replenishing the inventory, and changing the product's marketing and advertising scheme" and therefore finding the injunctive relief costs, considered with the other damages alleged in the complaint, exceeded the $5 million CAFA threshold).

47.   <u>Other Claims</u>.  In addition to the claims and related damages discussed above, Plaintiffs also assert claims for unjust enrichment, breach of fiduciary duty, and intrusion upon seclusion/invasion of privacy.  [Compl., ¶¶ 182-88 (unjust enrichment); ¶¶ 212-20 (breach of fiduciary duty); ¶¶ 221-31 (intrusion upon seclusion/invasion of privacy).]  Plaintiffs allege that they have suffered or will suffer damages related to these claims, including, but not limited to, "actual damages in an amount equal to the difference in value between the money Plaintiffs and Class Members paid for health services assuming reasonable data privacy and security practices and procedures"; "actual identity theft"; "the compromise, publication, and/or theft of their Private Information"; "out-of-pocket" expenses; "lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach"; "future costs in terms of time, effort, and money that will be expended as a result of the Data Breach for the remainder of the[ir] lives"; and other damages.  [*Id.* at ¶¶ 186, 219, 231.]  Plaintiffs seek compensation for these alleged violations and also assert that

– 15 –

84454377.1

YRMC should be compelled to "disgorge into a common fund for the benefit of Plaintiffs and Class Members all unlawful or inequitable proceeds received by [YRMC] as a result of the conduct and Data Breach alleged in th[e] Complaint." [*Id.* at ¶¶ 188, 220, 231.]

48.  No allegations in the Complaint allow YRMC to calculate with specificity the amount of these alleged damages and relief. However, YRMC underscores these allegations to the Court as further evidence that the amount in controversy exceeds $5,000,00, as already established above. *See, e.g.*, *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020) (finding plaintiff's complaint "put more than $5 million in controversy" when he sued for "compensatory damages, punitive damages, and attorney's fees for a two year class period").

49.  Accordingly, because this case was pled as a class action, and because minimal diversity, class size, and the amount in controversy requirements of CAFA are satisfied, YRMC has properly removed the State Court Action to this Court.

50.  Indeed, based on the above, there is no "legal certainty" that Plaintiffs could not recover an aggregate amount exceeding $5,000,000 required for CAFA removal. *See* 28 U.S.C. § 1332(d)(6); *Guglielmino*, 506 F.3d at 699; *Sanchez*, 102 F.3d at 402. Accordingly, YRMC has properly removed the State Court Action to this Court.[6]

## NOTICE

51.  As required by 28 U.S.C. § 1446(d), YRMC is providing written notice of the filing of this Notice of Removal to Plaintiffs and is filing a copy of this Notice of Removal with the Clerk of the Yuma County Superior Court.

WHEREFORE, Defendant Yuma Regional Medical Center removes the State Court Action from the Superior Court of Arizona, Yuma County, to the United States District Court

---

[6] The party opposing removal jurisdiction has the burden of proving that a discretionary or mandatory exception under CAFA applies. *Serrano*, 478 F.3d at 1024 ("[A]lthough the removing party bears the initial burden of establishing federal jurisdiction under § 1332(d)(2), once federal jurisdiction has been established under that provision, the objecting party bears the burden of proof as to the applicability of any express statutory exception."). This Notice of Removal does not address, nor concede, any issues related to the CAFA jurisdiction exceptions.

– 16 –

84454377.1

1  for the District of Arizona.

2  Date: July 25, 2022.

By: *s/ Michelle M. Buckley*
Michelle M. Buckley
**POLSINELLI PC**
One E. Washington St., Ste. 1200
Phoenix, AZ 85004

Paul G. Karlsgodt (*pro hac vice* forthcoming)
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, Colorado 80202

*Attorneys for Defendant Yuma Regional Medical Center*

– 17 –

84454377.1